INTERNATIONAL FORWARDING CO., INC. *v.* UNITED STATES

No. 4898.—Invoice dated Reutlingen, Germany, April 15, 1939.
    Certified April 19, 1939.
    Entered at New York May 4, 1939.
    Entry No. 840660.

(Decided May 7, 1940)

*Benjamin A. Levett* for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

DALLINGER, Judge: This appeal to reappraisement involves the question of the dutiable value of certain paper tubes imported from Germany and entered at the port of New York in May, 1939. They were entered and appraised on the basis of the United States value, as defined in section 402 (e) of the Tariff Act of 1930. It is conceded that said merchandise has no foreign or export value; that the United States value thereof is the correct basis for appraisement; and that the basic selling prices in the United States for the various sizes of tubes involved herein are the basic selling prices returned by the appraiser. The only difference between the entered and appraised values is a deduction of 8 per centum for profit made by the importer on entry in computing net United States value, which deduction was disallowed by the appraiser on the ground that no profit was made in the purchase and sale of prototype merchandise. The only issue, therefore, is whether the importer was entitled to deduct the said 8 per centum for profit on entry.

At the hearing held before me at New York City on November 21, 1939, counsel for the Government moved to dismiss the appeal on the ground that it was prematurely filed. An examination of the papers, however, discloses that the appeal was filed the day after the notice of advance was received. Therefore, the statute was fully complied with, and the Government motion to dismiss must be and hereby is denied.

The plaintiff offered in evidence the testimony of W. E. Mayer, treasurer of the Adolff Bobbin Co., Incorporated, the real importer and the ultimate consignee herein. He testified that previous to the present importation he had imported identical merchandise and sold the same in the United States at the same prices he received for the present merchandise. Interrogated as to his procedure in acquiring the merchandise that was sold in this country at the time of the exportation of the merchandise at bar, the witness testified in part as follows:

The Adolff Bobbin Company places orders at the factory in Germany for any amount of this particular type of merchandise at certain prices and at the arrival or sometime after, or even sometime before the arrival of the merchandise, the Adolff Bobbin Company would go out in this country in America and buy from an exporter of copper or cotton a certain amount, so many bales of cotton and so many long tons of copper at the prevailing price in this country; purchase those goods, copper or cotton and ship them to Germany.

Q. Pay for them?—A. Pay for them in Germany, which I can show with an example. The goods are being shipped to Germany and they are sold to a wire works or some kind of factory that uses the material or in the case of cotton to cotton importers in Germany at the best possible price these goods can be sold in Germany in marks. The proceeds of these sales in Germany will go at our instructions on our so-called inland account, which we have been having at the Deutsche Bank in Berlin ever since we started these things, commodities, from here, and the credits created that way on our account in the Deutsche Bank in Berlin were used by us for payment of the particular merchandise, these tubes, in Germany.

Q. And the price you paid for these tubes, is the exact price stated on the consular invoice in marks?—A. Yes.

  \*    \*    \*    \*    \*    \*

Q. What does happen in Germany?—A. In making these transactions of buying here and selling in Germany, we would make a profit.

Q. Of how much?—A. Oh, anywheres between 25 and 35 percent, according to the commodity.

  \*    \*    \*    \*    \*    \*    \*

Q. You stated you made a profit. You bought in dollars and sold in marks. How much was the marks worth? How did you figure your profit?—A. We just figured from the rate of exchange of the mark.  \* \* \*

Q. Can we say you got marks which were when used in Germany worth 40 cents, and they cost you only 30 cents, approximately?—A. That's right.

Q. That is the way you made your profit?—A. That's right.

Q. That is how you paid for these tubes you brought in?—A. We used the marks on the Deutsche Bank for payment.

Q. After you had imported the merchandise and sold it here did you make a profit above your overhead and expenses and duties?—A. No.

Q. Did you come out about even?—A. Yes.

On cross-examination the witness testified in part as follows:

X Q. Mr. Mayer, did I understand you stated you made no profit whatever on this merchandise, that your profit was entirely on the sale of the copper and cotton?—A. Well, on the average it was.

X Q. You considered your profit on the other transaction?—A. That's right.

X Q. Not on this transaction?—A. Right.

On this record counsel for the plaintiff contends that the purchase and importation of the paper tubes in question and the exportation to and sale in Germany of cotton and copper the proceeds from which were used to purchase the said paper tubes, constitute one and the same transaction; and that inasmuch as a profit of from 25 to 35 per centum was realized, only the maximum deduction of 8 per centum for profit authorized by section 402 (e) of the Tariff Act of 1930 should be allowed. I do not concur in that view of the law.

A careful reading of section 402 (e) clearly indicates that the maximum allowance of 8 per centum for profit refers only to profit made upon such or similar imported merchandise which in the instant case consists of paper tubes imported from Germany and sold in the United States. It is conceded that in the importation and sale of said paper tubes in the United States no profit was realized. In my opinion the fact that the importer by selling cotton and copper in the German market made a profit of from 25 to 35 per centum, the proceeds of such sale being deposited in a German bank and a portion thereof used in the purchase of the said paper tubes, is entirely irrelevant to the issue herein.

In *United States* v. *American Aniline Products, Inc.*, 22 C. C. P. A. 380, T. D. 47399, the United States Court of Customs and Patent Appeals held that in computing United States value the allowance for profit should not be the general profit of an industry dealing in other merchandise, but should be the actual profit realized on prototype sales of the particular merchandise being appraised. In that case the court said:

In the case of purchased goods we think the deductions from the United States selling price of "such or similar imported merchandise" should be determined with respect to said merchandise. The profits to be ascertained are, in our opinion, the profits usually realized in the sale of *"such or similar imported merchandise."* Whatever profits are ordinarily realized in the sale of *"such or similar imported merchandise"* should be deducted from the United States selling price of *such* merchandise, up to, but not exceeding, 8 per centum of such price. [Italics mine.]

Manifestly American copper or cotton exported to Germany and there sold is not similar imported merchandise to the paper tubes constituting the imported merchandise at bar. Hence, it follows that the profit realized from the sale of the said exported cotton and copper does not come within the meaning of the profit allowance provided for in said section 402 (e).

On all the facts and the law applicable thereto I am convinced that the appraiser was entirely justified in disallowing the deductions of 8 per centum profit made by the importer in his entry; and the appraised values of the paper tubes in question are hereby held to be the dutiable values thereof.

Judgment will be rendered accordingly.